GATES, Appellant, vs. YOUNG and others, Respondents.

*April 16 — May 3, 1892.*

*Logs and lumber: Liability of inspector on his bond: Mistakes in scaling: Evidence: Instructions to jury.*

1. A lumber inspector is not liable upon his official bond for mere inaccuracies of opinion or mistakes of judgment, either of himself or of his deputies, in scaling logs.

2. Logs were scaled on the bank of a river, and afterwards a measurement was made of such of said logs as came into the boom on the river at their place of destination within a certain time. In an action upon the official bond of the inspector on the ground that the measurement at the boom was negligently and falsely made, it is *held* that the trial court was justified in charging the jury that the scalement on the bank was only material in determining the true amount at the boom; that the mere fact of a discrepancy in the amount of the scalement on the bank and the scalement at the boom, unaccounted for, standing alone, would not justify a finding for the plaintiff; and that the mere fact that the logs were not reported by the scaler at the boom during the time named was not sufficient to sustain a finding that the scalement at that place was fraudulent, dishonest, or imperfect.

3. It was conceded in the complaint that the scalement on the bank was correct, but plaintiff introduced evidence to show that the amount of logs there was greater than the scale bill showed. *Held,* that defendants were properly allowed to show that the amount was at least as small as the scale bill showed.

4. Evidence of the estimates of the amount of timber grown upon the land from which the logs were taken is *held* not to have been prejudicial to the plaintiff.

5. Evidence, offered by plaintiff, as to the amounts of money paid by him to scalers, loggers, and drivers on account of the logs scaled on the bank, was properly excluded.

APPEAL from the Circuit Court for *La Crosse* County. This action was commenced January 3, 1889. The complaint alleges, in effect, that April 8, 1885, the defendant *Young* was appointed lumber inspector of district No. 2, and thereupon qualified as such by executing a bond as principal,

with the other defendants as sureties, to the county of La
Crosse, in the penal sum of $5,000; that the conditions of
said bond are to the effect that if the said *Young* shall
faithfully perform his duties as such lumber inspector, and
deliver to his successor in office all bills, papers, journals,
books, and other effects pertaining to his office, then the
obligation be void, otherwise to remain in full force and
virtue; that said bond so executed was duly approved and
filed in the treasurer's office of said county; that between
December 1, 1885, and May 1, 1886, the plaintiff was the
owner of a large quantity of logs within the limits of said
district, situated on the bank of the east fork of the Black
river, and as such requested said *Young* as such inspector to
scale the same as required by the statutes; that pursuant to
such request said *Young* as such inspector made a scale-
ment of said logs and delivered to the plaintiff bills thereof,
and that according to such bills the scalement or measure-
ment of said logs amounted to 10,845,940 feet, and that
such amount was the true, correct, and actual scalement or
measurement of the number of feet in said logs; that the
plaintiff paid to the defendant as such inspector his stat-
utory fees therefor, amounting to the sum of $379; that
on the faith of said scalement the plaintiff paid out to log-
gers, drivers, and for stumpage on said logs the sum of
$67,500; that all of said logs were put into the east fork of
the Black river, which flows into the Black river and which
Black river flows to or near La Crosse; that between March
30, 1886, and April 1, 1887, and while the plaintiff was still
the owner of said logs, and while within said district, the
plaintiff requested said *Young* as such inspector to make a
true and correct scalement or measurement of such portion
of said logs as came into the boom on said Black river at or
near La Crosse within the period last named, and to make
and deliver to the plaintiff bills thereof, in accordance with
the statutes; that said *Young* did thereupon and in pursu-

ance of such request make a scalement or measurement of such logs which came into said boom within said period, and that said *Young* as such inspector negligently and falsely scaled and measured the same as containing 3,419,750 feet and no more, and that the plaintiff paid him his lawful fees therefor; that in fact and in truth the true, correct, and actual scalement or measurement of said logs which came into said boom within said period, and within said period so scaled or measured by said *Young*, should have been and was 6,446,940 feet; that the plaintiff had theretofore contracted to sell, and was obliged to and did sell, the logs last mentioned according to the said last-mentioned scalement or measurement, and was obliged to and did receive pay therefor on the basis that there was only 3,419,750 feet instead of the true amount as mentioned, and that by reason of the premises and such negligence and false scalement or measurement and such false bills thereof the plaintiff had been damaged in the sum of $5,000, and that such negligence and false scalement or measurement and such false scale bills are and constitute a breach of the conditions of said bond.    Judgment is prayed accordingly.

The answer consisted of admissions and denials and counter allegations.    At the close of the trial the jury returned a verdict in favor of the defendants, and from the judgment entered thereon the plaintiff appeals.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *J. G. Flanders* and *W. K. Gibson.*

For the respondents there was a brief by *Losey & Woodward,* and oral argument by *G. M. Woodward.*

CASSODAY, J.    On the former appeal a judgment of nonsuit was reversed on the ground that there was some evidence which might have justified the jury in finding that the defendant *Young,* or his deputy, had been guilty of

negligence in making the scale of the logs at the boom be-
tween March 30, 1886, and April 1, 1887. 78 Wis. 98. Upon
the last trial the case was submitted to the jury, and a ver-
dict was returned in favor of the defendants. A reversal is
now sought on the ground of errors in the rulings of the court
upon the trial. The correctness of such rulings depends
very much upon the true measure of *Young's* liability to
the plaintiff, as such lumber inspector, upon the bond in
question. Such liability, having been created by statute, is
necessarily to be measured by the language of the statute.

The bond is in the form prescribed, and is conditioned to
the effect that *Young* would "faithfully perform his duties
as lumber inspector of district No. 2, and deliver to his suc-
cessor in office all bills, papers, journals, books, and other
effects appertaining to his office." Sec. 1732, R. S. His
duties as lumber inspector, thus to be faithfully performed,
are indicated by another clause of the same section, which
provides that "each lumber inspector shall, before entering
upon the duties of his office, take and subscribe an oath
that he will *faithfully* discharge the duties of his office to
the best of *his knowledge, judgment, and ability.*" The stat-
utes also provide, in effect, that each such inspector "may
appoint one or more deputies, for whose *conduct and fidelity*
in the discharge of his duties as such he shall be responsible
upon his official bond." Sec. 1734, R. S. The statutes fur-
ther provide that "each lumber inspector and his deputies
shall, in surveying or measuring logs, *make such allowance*
for hollow, rotten, or crooked logs as would make them
equal to good, sound, straight, merchantable logs; and all
logs that are straight and sound are to be measured at their
full size, inside the bark, at the small end; and all logs over
twenty-four feet long, and not exceeding thirty-six feet,
shall be scaled or measured as two logs, *allowing* such rise
from the first to the second log as the same may require,
or as may *seem proper in the opinion* of the inspector or his

deputy." Sec. 1736, R. S. Such bills, certified by the inspector or deputy, are made by the statutes "presumptive evidence of the facts therein contained, and of the correctness of such scalement or measurement, in all courts, except in favor of the inspector or deputy inspector who made the same." Sec. 1735, R. S.

Manifestly the duties of such deputies are no more broad nor extensive than are those of the inspector himself. Each of them is to perform his duties faithfully, and " to the best of his knowledge, judgment, and ability." Fidelity is demanded in the formation of every opinion and judgment in making allowance for hollow, rotten, or crooked logs, and in the increase of the size of long logs. The statutes nowhere undertake to make the inspector an absolute guarantor or warrantor of the accuracy of any scale or measurement made by himself or any of his deputies. So long as he and they, in the performance of such duties, act with fidelity and to the best of their knowledge and ability, there can be no liability for mere inaccuracies of opinion or mistakes of judgment. *Smith v. Gould*, 61 Wis. 31; *Fath v. Koeppel*, 72 Wis. 289. Otherwise, where the duty is purely ministerial. *Robinson v. Rohr*, 73 Wis. 436.

Much less can there be any liability for the shortage of logs never pointed out to the inspector, and which he was never in fact requested to scale. The scale bills are not conclusive, but at most presumptive, evidence. It is conceded in the complaint that the scalement on the bank of the river prior to May 1, 1886, of 10,845,940 feet, was true and correct. There is no claim or pretense that all of those logs so scaled on the bank were or came within the boom at La Crosse between March 30, 1886, and April 1, 1887. On the contrary, it is conceded that no more than 6,446,940 feet of those logs were or came within that boom during that time. This is nearly four and a half millions less than the amount so scaled on the bank, and about

three millions in excess of the actual measurement at the boom as claimed by the defendants. There is no pretense of any liability on the part of the defendants as to that portion of the plaintiff's logs which did not reach the boom within the period last named.

Two questions were presented for the consideration of the jury: What was the amount of the plaintiff's logs which were or came within the boom at La Crosse during the period last named? Did the defendant himself, or by his deputies or deputy, faithfully scale or measure the same to the best of his knowledge, judgment, and ability? As indicated, both of these questions were resolved by the jury in favor of the defendants.

This brings us to consider whether there were any errors in the rulings of the trial court. Numerous errors are assigned to portions of the charge, but none of them appear to be prejudicial to the plaintiff. We think the court was justified in charging the jury, in effect, that the scalement on the bank was only material in determining the true amount at the boom; that the mere fact of a discrepancy in the amount of the scalement on the bank and the scalement at the boom, unaccounted for, standing alone, would not justify a finding in favor of the plaintiff; that the mere fact that the logs were not reported by the scaler at the boom during the period named was not sufficient to sustain a finding that the scalement at that place was fraudulent, dishonest, or imperfect. It is true, as contended by counsel for the plaintiff, there are some inconsistencies in the charge. In portions of the charge the jury were told, in effect, that they could not find in favor of the plaintiff unless *Young* or his deputy had been unfaithful, negligent, or wanting in ordinary diligence or skill in the discharge of such duties; while in other portions of the charge they were, in effect, told that they might so find if either of them, in the performance of such duties, was guilty of any

Gates vs. Young and others.

mistake or imperfection.   So in one portion of the charge they were told, in effect, that they might find in favor of the plaintiff if *Young* or his deputy made the scalement dishonestly or unfairly, or with an inadequate degree of diligence and skill, so that the plaintiff had been really wronged by it; while in another portion they were told, in effect, that there was no evidence tending to show that either of them corruptly or fraudulently made an incorrect scalement at the boom.   Being satisfied that this last view of the evidence is correct, it is obvious that the plaintiff was in no way prejudiced by such inconsistency; and this is true of all of such inconsistencies.

It is claimed, in effect, that the defendants were improperly allowed to give evidence tending to impeach the scalement on the bank of the river; and that this ruling was inconsistent with and not cured by the portion of the charge to the effect that the defendants were bound by the scale bills of the measurement on the bank of the river, and could not impeach the correctness of the same.   This is explained by the learned trial judge as follows: "Something has been said about the right of the defendant to impeach the scale on the bank.   As I understand the evidence, there has been no attempt by anybody to impeach that scale on the bank.   The plaintiff claimed that the scale represented the amount of logs as being too low, and introduced evidence to show that it was too low; that there were really more logs than that scale showed.   The plaintiff had a right to try to show it, and introduced evidence to prove that the amount of logs was more than the scale bill showed; and the defendant has introduced evidence to show that the amount was at least as small as the scale bill showed.   That is what I think that amounts to."   As indicated, the complaint admitted the correctness of that scalement.   We discover no error in such rulings.

For the same reasons we must hold that the evidence of

the estimates of the amount of timber grown upon the land from which the logs in question were taken was in no way prejudicial to the plaintiff. Such evidence on the part of the plaintiff and defendants was, to say the least, very remote, and related solely to a fact admitted in the pleadings, and hence about which there could be no legitimate dispute. Still more remote was the testimony sought to be given on the part of the plaintiff, as to the several amounts of money he had paid to scalers, loggers, and drivers on account of the logs so scaled on the bank; and hence the same was properly excluded.

The verdict is supported by the evidence. We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.