TEX. & ST. LOUIS R'Y CO. v. I. T. SUGGS.

(Case No. 1742.)

62  323
90  320

1. CHARGE OF THE COURT.— A charge which declares that it is the duty of those operating trains to inspect the same is not erroneous when the damage sustained is alleged to have been caused by negligence of the carrier in failing to furnish safe cars for traveling purposes.
2. EVIDENCE — NEGLIGENCE.— The fact that the car within a short distance was twice derailed showed *prima facie* negligence on the part of the carrier in permitting such car to be used for carrying passengers; and in case such evidence was not, in the opinion of the jury, rebutted, a verdict for damages in favor of a person injured thereby should stand. Following Edgerton *v.* N. Y. & H. R. R. Co., 39 N. Y., 229; Shearman & Redfield on Negligence, 280.
3. SAME — CHARACTER OF INJURY.— If physicians disagreed as to the nature of the injuries sustained by plaintiff, this would not be sufficient to set aside the verdict on the ground that the evidence does not show that he suffered any physical injury, when they all agreed as to his physical suffering.

APPEAL from Titus. Tried below before the Hon. B. T. Estes.

I. T. Suggs, the appellee, brought this suit against the Texas & St. Louis Railway Company, for damages to him caused by the overturning of the passenger car in which he was traveling. He claimed to have been seriously injured, that his head was cut, his body crushed and some of his ribs broken, besides having severe internal injuries. He alleged that he was confined to his bed for two months, and that he was damaged in his not being able to attend to business affairs. He also sued for exemplary damages.

The railway company answered by general demurrer, specially

excepted to the claim for exemplary damages, and specially answered by setting up the fact that the accident was inevitable and caused by no lack of care on the part of the defendant company. Appellee obtained a judgment for $1,250.

*Herndon & Cain*, for appellant, cited: R. R. Co. *v.* Lyde, 57 Tex., 508; R. R. Co. *v.* Halloran, 53 Tex., 47; R. R. Co. *v.* Bracken, 59 Tex., 71; Lewis *v.* Flint & P. M. R. R., 23 Amer. Law Reg., p. 604; 1 Sutherland on Damages, p. 17; 2 Am. & Eng. R. R. Cases, 188.

*W. P. McLean*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— It is urged that the court erred in giving the following charge: " The defendant, in order to provide for the safety of their passengers, are bound to employ competent agents and employees to run their trains and prepare the same, and such agents must exercise constant care and diligence in keeping their trains and roadway in order, and unless the evidence shows that the agents of defendant having charge of the train upon which the plaintiff was a passenger, and whose duty it was to inspect the same, performed their respective duties, and exercised such diligence as a very careful man would exercise in his own affairs, then the defendant would be liable for such actual damages as the evidence shows resulted from the injuries sustained," etc.

Other parts of the charge stated the duties and liabilities of the respective parties very fully and fairly.

The charge complained of is objected to on the ground that it assumes that it was the duty of the persons running the train to inspect it.

If this be true, it certainly gave to the jury a correct rule of law, unless it be true that a carrier of passengers by rail, who causes its cars to be inspected at certain places on its line by persons who are employed for that express purpose, thereby uses all the care which the law imposes on it for the safety of passengers, and relieves those engaged in operating trains from the duty of examining their trains in any respect between regular inspection stations.

It is peculiarly the duty of those operating trains between such points to examine and watch the trains in their charge that they may detect and repair any defect likely to imperil passengers, and for their failure to do so, in so far as they can by the exercise of a high degree of care, their employers are responsible if damage to a passenger result.

The facts of this case illustrate the wisdom of the rule which exacts such care.

The passenger-coach which ran off of the track, from which it is claimed the injury to appellee resulted, was inspected at Texarkana, but when it reached the tank at Mt. Pleasant this same car left the track. There seems to have been no regular car inspector there. That car was again put on the track. The fact that it had left the track would indicate that either the car or track were not in good order, for cars do not ordinarily leave the track if they are; under such circumstances, was it not the duty of those persons in charge of the train to examine and know what caused the derailment? or might they say, " this car was inspected at Texarkana, and thereby my employer has exercised, through another agent, all the care which the law exacts of him."

Such a rule as that contended for by appellant would relieve carriers by rail, practically, from the duty, through proper agents, of exercising, at all times and in all places, that degree of care without which there is no safety to passengers.

It was urged that there was no evidence that the injury of which the appellee complains resulted from any neglect of the railway company, or that either the car or track was defective.

The evidence shows that the car left the track at the tank at Mt. Pleasant, and that without being in any way repaired it was placed on the track again, and that after running a short distance it was derailed again and turned over.

Afterwards, by another train, it was taken up and taken to Tyler, and when inspected there it was found to be broken; but in reference to these breaks witnesses for appellant gave it as their opinions that they would not affect the safety of the car. They, however, described the injuries, and it was for the jury to pass on their probable effect, under all the evidence. The same witnesses stated that the injuries to the car of which they spoke, and of which they knew nothing except from an inspection of the car after it reached Tyler, occurred when the car left the track. Their statements were matter of opinion, but if it be conceded that their opinions were correct as to the cause of the injuries to the car, then, did the breaks occur when the car left the track at the tank or at time the car was overturned?

The witnesses did not profess to, and in the nature of things, they not being present, could not, testify as to this matter. If the breaks occurred when the car left the track the first time, it was for the jury to determine whether it was negligence to put it on the

track again, and also to determine, from the description given by the witnesses of the breaks, whether they were such as were likely to render the car unsafe.

There was also evidence tending to show that after the car left the rails it ran a considerable distance before it turned over. Whether it might, by the exercise of due care, have been stopped before it turned over, and the injury thereby averted, was a matter for the consideration of the jury. The fact that the same car, within a distance of seven or eight miles, had twice left the track was one which the jury might consider, and if, in the opinion of the jury, the evidence offered for the appellant was not sufficient to rebut such evidence of negligence as that fact afforded, then there is no rule of law which would authorize this court to set their finding in this respect aside. Edgerton v. N. Y. & H. R. R. Co., 39 N. Y., 229; McMahon v. Davidson, 12 Minn., 358; Shearman & Redfield on Negligence, 280.

It is urged that there was no evidence to show that the appellee suffered any serious injury. The evidence of the appellee himself, and of his family, tends to show that he was seriously injured. His attending physician gave it as his opinion that some of the appellee's ribs were fractured, and detailed the facts on which he based his opinion. He also stated that the lungs of his patient were affected by the injury, that he occasionally spit blood, and that he suffered intensely.

Another physician testified to the bruise of the side of the appellee, but was of the opinion that there was no fracture. Other physicians, from an examination of the appellee, were of the opinion that some of the ribs were fractured, but they disagreed among themselves as to the real cause of the suffering of the appellee, which none of them denied.

There was ample evidence to sustain the verdict in this respect, and that there may have been some conflict, furnishes no reason for setting the verdict aside.

The judgment is affirmed.

AFFIRMED.